Bryce M. Carnell, Appellant, *v.* Commonwealth of Pennsylvania, State Civil Service Commission, Appellee, and The Pennsylvania Fish Commission, Intervening Appellee.

Argued December 3, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Robert N. Rowlands,* with him *Paul W. Reeder, Sr., William L. Knecht* and *McCormick, Lynn, Reeder, Nichols & Sarno,* for appellant.

*Theodore A. Adler,* Deputy Attorney General, with him *Israel Packel,* Attorney General, for appellee.

Peter J. Ressler, Chief Counsel, for intervening appellee.

OPINION BY JUDGE CRUMLISH, JR., May 3, 1974:

Our Commonwealth's Civil Service Commission by order dated March 16, 1973 dismissed the appeal of Bryce M. Carnell and sustained the action of the Pennsylvania Fish Commission in reassigning him from his duties in Franklin County to Lawrence County.

On or about June 12, 1971, Carnell, in performance of his duties as Waterways Patrolman I, apprehended men named Rice and Courtney Gustafson in the act of killing frogs. Killing frogs under the conditions in which Rice and Gustafson were apprehended, was, as Carnell viewed it, a violation of the laws of our Commonwealth. Gustafson when apprehended, was a full-time employe of the Pennsylvania Fish Commission. Carnell reported these sinister activities to his superior.

A controversy then arose within the Pennsylvania Fish Commission as to whether Gustafson had committed any violation of the "fish laws" and therefore whether a prosecution was warranted.[1]

---

[1] Whether a frog or a fish is not in controversy. Frog season runs from July 1 to October 31. The Fish Laws of 1959, Act of December 15, 1959, P.L. 1779, §300. Therefore it would appear that Gustafson leaped into this frog killing expedition before the lawful period began.

However it was also evident that the frog killing took place on the Mt. Parnell Fisheries property, owned by Rice. Since Rice was issued a fish propagation license under Section 170 of the Fish Law, he had the power under Section 178 to kill out of season frogs and tadpoles which threatened his fish population.

The controversy relative to the possible prosecution of Gustafson within the Commission arose from the fact that Gustafson, in addition to being a full-time employee of the Commission, was a

While in attendance at a meeting of a sportsmen's club in Franklin County on August 9, 1971, Carnell made public statements to the effect that

1) he felt Gustafson should be prosecuted;

2) he was having a dispute with his superiors, and

3) if an employee of the Fish Commission could not be prosecuted, no one should be.

At a later meeting at the same club, Carnell, dismayed at the membership's reluctance to remonstrate with the Commission in support of prosecution, baited the club by saying that "perhaps some time when we (the Club) needed him he would be in another part of the country."[2]

As a result of these events, on July 21, 1972, Charles E. Leising, the Director of the Bureau of Waterways of the Pennsylvania Fish Commission, notified Carnell by letter that he had been reassigned to duty in Lawrence County and that his present position in Franklin County would terminate on August 11, 1972.

Subsequently, Carnell appealed his reassignment to the State Civil Service Commission (Commission) which, after a hearing on October 26, 1972, dismissed the appeal of Carnell.

Carnell, Appellant here, carries this decision to this Court.

Appellant requested a hearing with the Commission under Section 951(b), contending that certain acts of discrimination had precipitated his reassignment, in violation of Section 905.1 of the Civil Service Act, Act of August 5, 1941, P.L. 752, as amended, 71 P.S. §741.905a. Appellant also requested a hearing under

---

part-time employee of Rice. The question was whether Rice could delegate his power to eliminate frogs to an employee and in this instance, a part-time employee. If such a delegation was not proper, Gustafson was illegally killing frogs and a prosecution by Carnell had legs on which to stand.

2 Minutes of the meeting.

Section 951(a) of the Civil Service Act, alleging his reassignment violated his re-employment rights to the Franklin County position granted under Section 705.1.

An adjudication of the State Civil Service Commission will be affirmed on appeal to the Commonwealth Court unless such adjudication was not in accordance with law or any necessary finding of fact was not supported by the evidence or constitutional rights of the Appellant were violated. *Ricker v. Civil Service Commission,* 7 Pa. Commonwealth Ct. 329, 300 A. 2d 293 (1973).

Appellant alleged discrimination in his contention charging it to his affiliation with a union and conservation group. The Commission discounted this allegation. This finding is supported by the evidence.

Appellant has abandoned this contention before us and now takes the position that the Fish Commission acted without authority when it transferred the Appellant for disciplinary reasons. Appellant contends that while under the Civil Service Act, he may be *suspended* for disciplinary considerations, he may not be *reassigned.* This position is without merit.

Section 705 of the Civil Service Act in pertinent part states: "An appointing authority *may at any time assign* a classified employee under his jurisdiction from one position to another in the same class. . . ." (Emphasis supplied.) Here Appellant was reassigned from Franklin to Lawrence County in the same class and position, Waterways Patrolman I. The appointing authority, here embodied in the Executive Director of the Fish Commission, determined that Appellant's effectiveness in the Franklin County area had been compromised by his public statements, and that, in reviewing the Appellant's past excellent record, reassignment rather than suspension would best benefit the workings of the Fish Commission. The Commission determined that this decision was not based on discrimin-

atory or non-meritorious factors, and we now determine that the Director acted within his authority, as evidenced by clear statutory language, in reassigning rather than suspending Appellant.[3] We find and so hold that the Commission did not jump to an unjustified conclusion.

Appellant also contends that Section 705(a) of the Civil Service Act gives an employe a priority claim in the position he holds, and in the event he is reassigned, he has an opportunity to return to his previous assignment within a time limit equal to the appropriate probationary period.

Section 705(a) provides:

"Any classified employe transferred, reassigned, or promoted from one position to any other position in the same or another classification, and remaining in the position through a period of time equivalent to the accepted probationary period for that position, shall be deemed to have vacated the position from which he was transferred, reassigned or promoted and to have acquired status in the position to which he was transferred, reassigned or promoted: Provided, That during such period of time he shall retain reemployment rights in the former position.

A position so vacated shall be filled by appointment or promotion from eligible lists certified by the commission." 71 P.S. §741.705(a).

We cannot agree with Appellant that Section 705(a) bestows upon a reassigned employe the ability to return to his prior position if he so petitions within the accepted probationary period.

---

[3] We are not persuaded by Appellant's argument that an employee can only be suspended or dismissed if such an action is based on disciplinary considerations. We can find no statutory limitation on the power to reassign and any improper use of this power can be reviewed through a hearing before the Commission.

Initially, we must note that if we accept Appellant's position, Section 705 would be emasculated. No longer would the power to reassign rest in the appointing authority, but it would repose in the employe himself who, based on his wishes, could accept or refuse reassignment.

The Commission, in interpreting Section 705(a) stated:

"To qualify for reemployment rights when a reassignment is made, the position to which the employe was reassigned must be placed in jeopardy, or must demand duties and obligations that, through errors or omissions of the appointing authority, were not made clear to the employe prior to the assignment."

Section 705(a) clearly bestows rights on the reassigned employe, but we feel they fall short of the position advanced by Appellant. We say that a reassigned employee during the accepted probationary period retains reemployment rights in his former position should his new position, for example, be eliminated or, as stated by the Commission, "placed in jeopardy". However we do not believe that a reassigned employee can demand reinstatement to his former position under the guise of Section 705(a) when he was reassigned to a like position in another county by the proper authority, and for other than discriminatory or non-meritorious factors.

Accordingly, we enter the following

## ORDER

AND NOW, this 3rd day of May, 1974, the Order of the State Civil Service Commission dated March 16, 1973, is hereby affirmed.